**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PHREESIA, INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | C.A. No. 24-1168-JLH-CJB |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| LUMA HEALTH, INC., ) | |
| ) | |
| Defendant. | |

**RESPONSIVE LETTER BRIEF TO THE HONORABLE
CHRISTOPHER J. BURKE FROM DAVID E. MOORE**

OF COUNSEL:

Ryan Marton
Phillip Haack
Songmee Connolly
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: (415) 360-2515

Dated: August 12, 2025
12411370 / 24585.00001

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Tyler C. Cragg (#6398)
Andrew M. Moshos (#6685)
Malisa C. Dang (#7187)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
tcragg@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com

*Attorneys for Defendant Luma Health, Inc.*

Dear Judge Burke,

  Defendant Luma Health, Inc. ("Luma") submits this letter in accordance with the Court's July 28, 2025 Oral Order (D.I. 46) on the parties' Joint Motion for Teleconference to Resolve Protective Order Dispute (D.I. 44) in response to Phreesia's August 5, 2025 letter (D.I. 51).

  First, in its letter Phreesia raises complaints regarding Luma's current AEO designations. *See* D.I. 51 at 1 (Luma has "over designated"); D.I. 51-3 ¶ 7 (complaining of "inability to view discovery materials produced by Luma, all of which presently bear an AEO designation"); *id.* ¶ 8 (arguing "if Luma's proposed protective order is entered over Phreesia's objection" Phreesia's designated in-house counsel "will be prevented from personally viewing, or substantively, discussing, AEO designated documents"). But these complaints are immaterial to the issue before this Court and are also inaccurate and unripe. As noted in its letter brief (*see* D.I. 50 at Page 3 of 4), Luma designated materials as Outside AEO *on an interim basis* pursuant to D. Del. LR 26.2 due to the absence of a governing PO. Luma identified the absence of and need for a PO as early as April 1, 2025. *See* **Exhibit 4**. On April 14, 2025, Luma also stated in its written objections and responses, which accompanied its production, that its confidential materials "prior to entry of an adequate protective order" should be treated as Outside AEO pursuant to D. Del. LR 26.2. *See* **Exhibit 5** (relevant excerpt of Luma's Objections and Responses to Plaintiff Phreesia, Inc.'s First Set of Requests for Production). Luma also reiterated this in its subsequent meet and confer correspondence. Thus, Phreesia's purported inability to share Luma's confidential documents with its in-house representative(s) has nothing to do with any purported over-designation by Luma or desire to prevent access. Rather, it is due to Phreesia's own failure to seek earlier resolution of the form of PO to enter in this case. Once the PO is entered, and its protections are in place, Luma will designate its production in accordance with its terms (which includes an agreed "Confidential" tier that permits in-house counsel access). This should moot many, if not all, of Phreesia's complaints. If any dispute remains regarding access or designation levels, the PO has means by which they will be resolved. *See* D.I. 50-1 §§ 2.3, 3; D.I. 51-1 § 3. Again, the disputed issue here is the *form* of PO to enter. No specific designations or documents are at issue. Once the parties know which, if any, *particular* Luma confidential materials remain at issue, the parties can evaluate, *inter alia*, what harm or risk could result from disclosure to Phreesia's in-house designee(s), their relevance, and Phreesia's need to access them for this case.

  Second, Phreesia, for the first time, disclosed that the in-house representative seeking access is Allison Hoffman, its General Counsel of over five years. *See* D.I. 51-3; **Exhibit 6**. Although Ms. Hoffman claims she does not "participate" in "competitive decision-making" for Phreesia (D.I. 51-3 ¶ 3), Luma has serious concerns of the high risk of inadvertent disclosure or misuse if she is allowed *wholesale* access to *all* Luma confidential information produced in this case given her role and responsibilities which extend far beyond supervising and managing litigation. She is not only Phreesia's "head of legal affairs," advising on legal issues and responsible for legal matters relating to Phreesia's business. *Id.* ¶¶ 3, 5. She is on its Executive Management Team, a "Top Woman Leader" in the SaaS industry, and works "alongside the [] board and leadership team" as a "C-Level Executive and trusted advisor to the CEO and Board of Directors, with extensive and broad business, financial and legal experience in the technology and media sectors." Exhibit 6. While she claims she is not "involved with" and has "no control" over Phreesia's "overall competitive strategy" (D.I. 51-3 ¶ 4), she gives "business focused, cost effective and solutions-based legal support to drive revenue, increase efficiency and protect

business interests" with expertise in "Corporate Strategy," "Business Development," and "Deal Negotiation" "always identifying meaningful efficiencies" to "sell [Phreesia's] business to [its] customers." Exhibit 6. With such industry expertise and business focus in her executive advisory roles (presumably reporting to the CEO) there is serious risk of inadvertent disclosure or misuse of the Luma trade secrets Phreesia seeks to discover (*e.g*., Luma's financials and customer lists, and competitively sensitive information on its partners, customers, and Phreesia itself (*see* D.I. 50, D.I. 50-2)). Also, other than conclusory "strategic" and cost savings reasons (D.I. 51-3 ¶ 7), she gives no reason why Phreesia, like Luma, cannot fairly litigate and potentially resolve this false advertising case with competent outside counsel and other professionals if she has access to "Confidential" materials (like Luma), and even access to AEO materials pursuant to proposed Section 2.3 (unlike Luma).

Phreesia's cited cases are distinguishable or inapposite. In *Rheault v. Halma Holdings, Inc*., C.A. No. 23-700-WCB, 2023 WL 8878954 (D. Del. Dec. 22, 2023), plaintiff was allowed access to AEO materials as he was retired, did not compete with defendants, and already had a right to access "significant amounts of information about the defendants' finances." The court recognized that, "A party to a lawsuit is not required to provide an adversary who is a competitor with unrestricted access to the party's highly sensitive materials if the adversary's access to those materials would cause serious injury to the party." *Id.* at *2. In *vMedex, Inc. v. TDS Operating, Inc*., C.A. No. 18-1662-MN, 2021 WL 4806814 (D. Del. Oct. 14, 2021), the special master entered a PO where plaintiff argued none was needed since existing contracts sufficiently protected defendants' confidential information. The special master noted that the PO's "Confidential" designation level (which both parties have agreed on here) was "reasonable" to give "each party the ability to know what is going on in the litigation." In *Evertz Microsystems Ltd. v. Lawo, Inc*., C.A. No. 19-302-MN-JLH, 2019 WL 5864173 (D. Del. Nov. 8, 2019) plaintiff's long-time *outside* patent attorneys sought access to assist plaintiff's litigators given their expertise in the relevant art and where they agreed to be subject to a prosecution bar. After ensuring a broader prosecution bar, the court found the PO sufficiently balanced plaintiff's interests with the risk to defendant. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) simply held that counsel cannot be denied access on the "sole ground" of their in-house status and that a determination must be "by the facts on a counsel-by-counsel basis." *Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp*., C.A. No. 89-484-CMW, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990), citing *U.S. Steel*, was a patent case where the court evaluated the circumstances particular to the six identified in-house counsel before allowing access to confidential information. Finally, *R.R. Donnelley & Sons Co. v. Quark, Inc*., C.A. No. 6-32-JJF, 2007 WL 61885, at *2 (D. Del. Jan. 4, 2007) was also a patent case where the Chief Patent Counsel was permitted access as his role was strictly limited to supervising legal decision-making on plaintiff's IP portfolio and enforcement, and he did not report directly to any business person with direct responsibility for competitive decision-making (unlike Phreesia's GC here). The circumstances of this case warrant allowing Luma the ability to protect and restrict access to its trade secrets and other competitively sensitive information which it may be required to produce in this case. *See, e.g.*, *PhishMe, Inc. v. Wombat Sec. Techs., Inc*., C.A. No. 16-403-LPS-CJB, 2017 WL 4138961, at *8 (D. Del. Sept. 18, 2017); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co*., C.A. No. 14-1432, D.I. No. 106 (Feb. 11, 2016). Luma thus respectfully requests that its proposed PO be adopted and entered.

The Honorable Christopher J. Burke
August 12, 2025
Page 3

        Respectfully,

        */s/ David E. Moore*

        David E. Moore

DEM:rms/11917108/24585.00001

Enclosure
cc:    Counsel of Record (via electronic mail)